UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARIA TAVAREZ DE DURAN,** *Claimant,* v. **NANCY A. BERRYHILL,** **Acting Commissioner of Social Security,** *Defendant.* | Civil Action No. 16-03514 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Claimant Maria Tavarez De Duran's ("Claimant") request for review of Administrative Law Judge Gerardo Pico's (the "ALJ") decision regarding Claimant's application for Supplemental Security Income Benefits ("SSI") under Title XIV of the Social Security Act. For the reasons set forth below, the ALJ's decision is vacated and the case is remanded to the ALJ for further proceedings consistent with this Opinion.

**I.   APPLICABLE LAW**

   **A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla" of evidence, but "need not rise to the level of a

1

preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Halter, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013) (quoting Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973)).

### B. Five-Step Sequential Analysis

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity,

then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" to perform his past relevant work. 20 C.F.R. §416.920(e). If the answer is yes, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3). At the fifth and final step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. Procedural History

Claimant applied for SSI on June 29, 2012 and alleged an onset date of June 6, 2012. Certified Transcript ("T.R.") 210, 287. The claim was initially denied in October 2012 and again on reconsideration in May 2013. T.R. 114, 126. Claimant then requested a hearing by an administrative law judge. T.R. 128. After the hearing, the ALJ issued a decision concluding that Claimant is not disabled within the meaning of the Social Security Act. T.R. 56–60. The ALJ

3

found that Claimant is afflicted with multiple "severe impairments," but that no such impairment or combination of impairments "meets or medically equals the severity" required to amount to a per se disability at step three. T.R. 56. The ALJ concluded that Claimant has the residual functional capacity to perform work with the following limitations: "stand/walk 4 hours, alternate to sitting for 15 minutes after every 1 hours of walking, occasionally climbing ladders and scaffolds; and frequently balancing." T.R. 56. The ALJ also found that Claimant would be able to perform her past relevant work as a dressmaker, sewing machine operator, and sorter, but not as a babysitter. T.R. 59. The Appeals Council subsequently denied Claimant's request for review, rendering the ALJ's decision the final decision of the Commissioner. T.R. 1–9. Claimant now appeals that decision.

### B. General Background

Claimant is a 61-year-old woman. T.R. 109. She alleges that she has been disabled since she was 54 years and 7 months of age and that her disability has caused "musculoskeletal" pain in her leg and foot. T.R. 221. Claimant's work history is brief. The record indicates that she worked as a babysitter for two years. T.R. 69. Prior to that, she worked in a factory sorting clothing. Id. Claimant testified that she stopped working at the factory because she "couldn't work standing." Id. Claimant also testified that she used to work as a dressmaker but explained that she is no longer able to sit for long periods of time. T.R. 70.

### C. Medical Evidence

The Commissioner has summarized the medical evidence in her brief. See Def. Br. at 7–8. The Court finds that the Commissioner has adequately summarized the medical evidence, and hereby adopts her summary, in its entirety. The Court addresses the medical evidence only where necessary to the adjudication of the claim in Section III, infra.

4

### D. Vocational Expert

At the administrative hearing, the ALJ asked a vocational expert whether someone with Claimant's vocational profile could perform her past relevant work if she was limited as follows:

> standing/walking four hours in an eight-hour workday, but she would need to alternate to sitting every hour for 15 minutes. The hypothetical person would be limited to occasional climbing ladders or scaffolds and frequent balancing.

T.R. 76–77 (further noting that the individual could work while sitting and standing). The expert ultimately opined that the hypothetical individual could perform as a sorter and seamstress, but not as a babysitter. T.R. 78–79.

### E. ALJ Decision

On July 14, 2014, the ALJ issued a decision in which he concluded that Claimant was not disabled. At step one of the five step process, the ALJ concluded that Claimant had not engaged in "substantial gainful activity" since the date of her application. T.R. 56. At step two, he determined that Claimant "has the following severe impairments: varicose veins in right calf, calcaneal spurs in the right heel, [and] mild osteoporosis." T.R. 56. At step three, the ALJ found that none of the impairments individually or collectively met or medically equaled the severity of a listed impairment. T.R. 56. Moreover, the ALJ determined that Claimant's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not be "entirely credible." T.R. 57. As such, the ALJ determined that that Claimant's physical condition "had not deteriorated to the point where she could not engage in a sustained work routine" with limitations. T.R. 59.

At step four, the ALJ found that Claimant has the "residual functional capacity" to perform work with the following limitations: Claimant can stand or walk for four hours but must alternate to sitting for fifteen minutes after each hour of walking. T.R. 56. The ALJ further concluded that Claimant can occasionally climb ladders and frequently balance. T.R. 56. The ALJ then relied on

the testimony of the vocational expert to conclude that Claimant could therefore perform her past relevant work as a dressmaker, sewing machine operator, and sorter. T.R. 59. In short, the ALJ found that her past relevant work did "not require the performance of work-related activities precluded by [Claimant's] residual functional capacity." T.R. 59.

### III. ANALYSIS

Claimant argues that the ALJ's decision should be reversed for the following reasons: (1) the ALJ erred by failing to consider the evidence and effects of Claimant's combined severe impairments; (2) the ALJ erred in failing to conduct a full residual functional capacity assessment; and (3) the ALJ erred in finding that Claimant's work as a dressmaker, sewing machine operator, and sorter constituted past relevant work. While the Court finds Claimant's first two arguments unpersuasive, the Court vacates the ALJ's decision and remands for consideration of Claimant's past relevant work.

#### A. Cumulative Effect of Claimant's Impairments

Claimant argues that the ALJ failed to consider the cumulative effect of each of her impairments. See Pl. Br. at 19–20. The Court disagrees.

Although the ALJ must set forth reasons for his determination that the claimant's impairment matches, or is equivalent to, one of the listed impairments, Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000), the ALJ need not use "particular language or adhere to a particular format in conducting his analysis," Jones, 364 F.3d at 505. Rather, there need only be "sufficient development of the record and explanation of findings to permit meaningful review." Id.; see also Scuderi v. Comm'r of Soc. Sec., 302 F. App'x 88, 90 (3d Cir. 2008).

Here, the ALJ's opinion sufficiently considers and explains whether any of Claimants

impairments or combination of impairments give rise to a disability. See T.R. 59. The ALJ explicitly stated that he gave "great weight" to the opinion of Dr. Malaret, an internist and impartial medical expert who testified that none of Claimant's conditions—varicose veins, calcaneus spurs, or mild osteoporosis—"meet or equal any Listing of the Social Security Administration." T.R. 59 (emphasis added). The ALJ further noted that Dr. Malaret's opinion was "consistent with the objective evidence contained in the medical record," which the ALJ discussed in depth. T.R. 59 ("[Dr. Malaret] is a specialist who had the opportunity to evaluate all of the medical evidence." (emphasis added)). Accordingly, the ALJ's decision reflects sufficient consideration of the cumulative impact of Claimant's impairments.

### B. Full Residual Functional Capacity Assessment

Claimant maintains that the ALJ failed to conduct a full residual functional capacity ("RFC") assessment. The Court disagrees.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (internal quotation marks omitted). When determining an individual's RFC, the ALJ must consider all relevant evidence and the ALJ must provide "a clear and satisfactory explication of the basis on which it rests." Id. at 41 (internal quotation marks omitted). However, "the ALJ need only include in the RFC those limitations which he finds to be credible." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).

Here, the ALJ identified and discussed substantial evidence in the record that supported his RFC finding. The ALJ explicitly stated that Claimant's doctor found that she "showed normal gait and station," that her "bones/joints and muscles examination was unremarkable," that her "reflexes were good and [there was] no loss of sensation," and that her foot pain had improved since she

7

was seeing a podiatrist.  See T.R. 57–58.  The ALJ also noted that another doctor found that Claimant's lower extremities showed varicose veins in the right calf, but no lipodermatosclerosis or ulcers.  T.R. 58.  Similarly, a study of her right lower extremity indicated that there was no evidence of acute deep thrombosis or intraluminal thrombus.  T.R. 58.  Moreover, as previously discussed, the ALJ indicated that he gave great weight to the opinion of Dr. Malaret, who indicated that there were no limitations in the record other than those caused by the varicose veins, calcaneus spurts, and mild osteoporosis.  T.R. 58–59.  Accordingly, the ALJ "offered specific, factually-supported reasons" for his determination that Claimant's alleged limitations were "less than fully credible."  See Salles, 229 F. App'x at 148.

Although Claimant argues that the ALJ ignored the limitations imposed by her varicose veins, chronic venous disease, calcaneal spurs, osteoporosis, and obesity, the Court finds this argument unavailing.  As an initial matter, the ALJ's opinion contains explicit consideration of Claimant's varicose veins, calcaneal spurs, and osteoporosis.  See T.R. 57–59.  With respect to Claimant's chronic venous disease, the ALJ explained that one of Claimant's doctors indicated that her calf and foot discomfort was "most likely not from her chronic venous disease."  T.R. 58.  Thus, the ALJ provided his reasoning for discounting evidence related to Claimant's chronic venous disease.

While Claimant is correct that the ALJ's opinion lacks discussion of the effect of obesity on her impairments, the Third Circuit has held that remand is not required where "it would not affect the outcome of the case."  Rutherford v. Barnhart, 399 F.3d 546, 552–553 (3d Cir. 2005).  In Rutherford, the claimant argued that the ALJ failed to consider her obesity, a condition present in her medical records.  Id.  The Third Circuit found, however, that the claimant never mentioned obesity as a condition that contributed to her inability to work, even when asked directly.  Id. at

8

553. Moreover, the Third Circuit found that a "generalized" assertion that "her weight makes it more difficult to stand, walk and manipulate her hands and fingers," was insufficient to require a remand where the record indicated that the ALJ "relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments." Id. The same analysis applies here. When asked about her medical issues by the ALJ, Claimant confirmed that they related to her legs. T.R. 69–70. There was no mention of obesity. See id. Even assuming, however, that obesity could be a factor, Claimant, like the claimant in Rutherford, has not specified how it would affect the analysis. Claimant seems to imply that her obesity exacerbated her symptoms but provides no further explanation. Such an implication would merely indicate that her weight made it more difficult for her to stand and walk—the same type of generalized assertion that the Third Circuit found insufficient to require remand in Rutherford. Moreover, Dr. Malaret, whose opinion was given "great weight," was aware of Claimant's obesity, but did not find that it added to Claimant's limitations. Accordingly, the Court finds that the ALJ's adoption of Malaret's conclusion constitutes "a satisfactory if indirect consideration of that condition." See Rutherford, 399 F.3d at 553.

### C. Past Relevant Work

Finally, Claimant argues that the ALJ erred in finding her past work as a dressmaker, sewing machine operator, and sorter constituted past relevant work. The Court agrees.

At step four, the ALJ must determine whether a claimant can perform her past relevant work. See 20 C.F.R. § 416.920. Past relevant work refers to work done by the claimant within the past fifteen years "that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). Earnings show substantial gainful activity if monthly earnings exceed those in listed in the federal regulations. See 20 C.F.R. §

9

414.1574(b)(2); 20 C.F.R. 416.974(b)(2); see also Beeks v. Comm'r of Soc. Sec., 363 F. App'x 895, 897 (3d Cir. 2010) ("If a claimant's earning exceed guidelines set out in the regulation, a presumption arises that the claimant is engaged in substantial gainful activity.").

Here, however, the ALJ failed to consider that Claimant's earnings in the last fifteen years were less than the average monthly allowance for presumed substantial activity. An earnings query indicates that Claimant earned $3,164.96 as a sorter in 2007. T.R. 69, 219. Accordingly, her average monthly earnings would have been approximately $263.75, far below the substantial gainful activity earnings guideline for 2007 of $900. Claimant also reported earning $71 per week as a babysitter in 2012, which means that she would have earned $284 a month, again far less than the earnings guideline for 2012 of $1,010. T.R. 224. No additional inquiry was made as to how much Claimant earned as a dressmaker.[1] "Because the ALJ failed to recognize this issue . . . we must vacate and remand." Beeks v. Comm'r of Soc. Sec., 363 F. App'x at 897 (remanding where the ALJ "failed to consider (or mention)" that the claimants earnings were less than the average monthly allowance for presumed substantial activity); see also Welch v. Comm'r of Soc. Sec., 13-1864 (CCC), 2017 WL 4861620, at *3–4 (D.N.J. Oct. 26, 2017) (remanding where it was unclear whether the ALJ sufficiently considered the regulations as applied to the claimant's employment).

IV. CONCLUSION

Accordingly, the Commissioner's decision is vacated and this matter is remanded to the ALJ for proceedings consistent with this Opinion.

Date: April 29, 2019 /s/ *Madeline Cox Arleo*             .
                       Hon. Madeline Cox Arleo
                       UNITED STATES DISTRICT JUDGE

---

[1] If the ALJ finds that Claimant "cannot do [her] past relevant work . . . or [she] does not have any past relevant work[]," the ALJ must proceed to the final step to consider the residual functional capacity assessment, together with Claimant's vocational factors "to determine if [she] can make an adjustment to other work." 20 C.F.R. § 416.920(g)(1).